**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| Keith Nelson, | Civil Action No.: 2:24-cv- 685-RMG-MHC |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| | **(JURY TRIAL DEMANDED)** |
| Troon Golf, LLC, Caddie Services, LLC, Inc., Kiawah Island Club, LLC, and Donald Talley | |
| Defendants. | |

The Plaintiff above named, complaining of the acts of the above-named Defendants, states as follows:

<u>PARTIES AND JURISDICTION</u>

1.      Plaintiff, Keith Nelson ("Plaintiff"), is a resident and citizen of Collin County in the State of Texas.

2.      Upon information and belief, the Defendant Troon Golf, LLC, is a limited liability corporation doing business and maintaining offices and agents in the County of Charleston, State of South Carolina.

3.      Upon information and belief, the Defendant Caddie Services, LLC, is a limited liability corporation doing business and maintaining offices and agents in the County of Charleston, State of South Carolina.

4.      Troon Golf, LLC, and Caddie Services, LLC, own and operate a business under the name "Caddie Master."[1]

---

[1] Defendants Troon Golf and Caddie Services shall be referred to collectively as "Caddie Master."

5.    Upon information and belief, Defendant Kiawah Island Club, LLC, ("KIC") is a limited liability corporation doing business and maintaining offices and agents in the County of Charleston, State of South Carolina.

6.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331, 42 U.S.C. §2000e ("Title VII") and 42 U.S.C. §1981.

7.    This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

8.    Venue for all causes of action stated herein lies in the District of South Carolina, Charleston Division pursuant to 28 U.S.C. § 1391(b), in that Defendants do business in the district, and a substantial part of the events giving rise to Plaintiff's claims occurred in the district.

9.    Troon Golf, LLC, is subject to Title VII and 42 U.S.C. §1981.

10.    Caddie Services, LLC, is subject to Title VII and 42 U.S.C. §1981

11.    KIC is subject to Title VII and 42 U.S.C. §1981.

12.    Plaintiff timely filed his complaint with the Equal Employment Opportunity Commission ("EEOC") and the South Carolina Human Affairs Commission ("SCHAC") alleging discrimination based upon color and race. Plaintiff's charge of discrimination also included an allegation of retaliation.

13.    On or about November 21, 2023, Plaintiff received a right to sue notice from the EEOC regarding the complaint described above.

14.    That Plaintiff timely filed the foregoing action within ninety (90) days of the date on which he received the notice of right to sue described above.

15.     Plaintiff has exhausted all administrative remedies and conditions precedent, including timeliness, deferral and all other jurisdictional requirements necessary for the maintenance of this action.

16.     Plaintiff is a black American.

17.     In or around September 2021, Plaintiff was hired by Caddie Master as a golf caddie.

18.     Caddie Master assigned Plaintiff to work as a caddie at the Kiawah Island Club in Charleston County, South Carolina.

19.     While employed with Caddie Master, Plaintiff did not receive any disciplinary actions and was a model employee.

20.     In or about 2021, Plaintiff was provided Caddie Master's Employee Handbook (the "Handbook").

21.     The Handbook provided to Plaintiff did not include a conspicuous disclaimer as outlined in S.C. Code § 41-1-110.

22.     The Handbook provided to Plaintiff did not contain a disclaimer underlined in capital letters on the first page of the document.

23.     The first page of the Handbook was not signed by Plaintiff.

24.     The Handbook included promises that Caddie Master would not tolerate workplace harassment or discrimination based on race, color, or national origin. The Handbook also prohibited discrimination based on race, color, or national origin and promises to investigate any claim of such.

25.     As a caddie, Plaintiff's direct supervisor was the Caddie Manager, a position filled by Steven LaMarsh ("LaMarsh") and Jake Wetzel ("Wetzel").

26.     The job duties of a caddie include, but are not limited to, assisting golfers with navigating a golf course, carrying bags, cleaning equipment, and other duties to ensure golfers enjoy their outing (called "loops"). Caddies may assist golfers individually ("single bag") or in groups ("two bags", "three bags", "four bags", etc.).

27.     Serving as a caddie for larger groups (two, three, or four "bags") is more desirable because caddies are likely to make more money in fees and tips.

28.     Caddie Master, in conjunction with KIC, determined how caddies were to perform their work including, but not limited to, how many caddies were needed, how they were assigned, when they would begin work, what course to work, and how long they were needed to remain on the premises.

29.     During Plaintiff's employment, KIC in conjunction with Caddie Master, purposefully and intentionally limited Plaintiff's ability to be assigned to higher value assignments. Moreover, Defendants and their agents made direct efforts to assist non-black caddies with being assigned to higher value assignments while simultaneously making equal or greater effort to assign black caddies, including Plaintiff, to lower value assignments.

30.     By way of example, agents of Defendants would call white caddies before the work day started to inform them of specific times to arrive at the Caddie Shack to ensure they were assigned to "multiple bag loops." Defendants intentionally excluded Plaintiff from such information because of his race.

31.     By way of further example, because of Plaintiff's race, Defendants intentionally excluded Plaintiff from working special events or tournaments because doing so would almost certainly ensure a caddie would be assigned to a "multiple bag loop." Instead, Plaintiff was assigned to other areas where he would be forced to work "single bag" loops.

32.    By way of further example, Defendants would remove Plaintiff from assignments, make him "unavailable" to guests, "skip" assigning him to "loops" and send more desirable and lucrative assignments to other white cadies. Moreover, when golfers specifically asked for Plaintiff to serve as their caddie or would inquire as to where Plaintiff was, Defendants would intentionally provide guests with inaccurate information so the assignment would not be made.

33.    Defendants engaged in this conduct because of Plaintiff's race to intentionally harm Plaintiff financially, intentionally force Plaintiff to end his employment with Caddie Master, and to force Plaintiff to stop working as a caddie at KIC.

34.    In or around September 2022, Plaintiff began working with Donald Talley. Talley was employed by Caddie Master, assigned to KIC, and served as "Caddie Manager."

35.    The "Caddie Manager" position is a supervisory position whose duties included assigning "loops," creating and modifying the schedule, and delegating tasks to other caddies. Caddie Managers also had the ability to hire and fire caddies.

36.    As a part of the facilities at KIC, caddies have a designated area to prepare for their work as caddies. The work area designated for caddies at KIC consists of a room where caddies can check their work schedule, review KIC member tee times, and prepare their equipment for the work day (the "Caddie Shack").

37.    On or about November 20, 2022, Plaintiff was scheduled to work at KIC with Talley and other Caddie Master employees.

38.    As is customary when starting work, Plaintiff reported to the Caddie Shack to view the day's schedule and prepare to lead groups of golfers.

39.    When Plaintiff entered the Caddie Shack, Talley was seated and leaning back in a chair with his feet propped up on a desk.

40.     Without warning or provocation, Talley looked at Plaintiff, who was still in the process of entering the Caddie Shack, and yelled, "**WHAT ARE YOU DOING? WERE YOU FUCKING BORN IN A BARN, NIGGER?**"

41.     Another Caddie, Brandon Pilkengton ("Pilkengton"), was also present in the Caddie Shack and heard Talley call Plaintiff a **NIGGER**. Upon hearing Talley, Pilkengton immediately left the Caddie Shack and stood outside the door on the front porch.

42.     After hearing Talley call Plaintiff a **NIGGER,** Plaintiff asked Talley if he knew the meaning and significance of the word. Talley responded that he was, in fact, aware and understood the meaning of the word **NIGGER**.

43.     After this discussion, Plaintiff left the Caddie Shack and met Pilkengton on the porch. Pilkengton confirmed he heard Talley call Plaintiff a **NIGGER** and left the room out of discomfort.

44.     Plaintiff then continued to prepare for the work day, which included communicating with Talley with respect to the "loops" Plaintiff was assigned to lead for the day.

45.     After Plaintiff finished leading his first "loop," he was contacted by the head Caddie Master, Wetzel, who learned of the incident involving Talley. Plaintiff reported what occurred in the Caddie Shack, including being called a **NIGGER** by Talley.

46.     Talley's employment with Caddie Master was Terminated after Plaintiff reported being called a **NIGGER** by Talley.

47.     Defendants and their agents, including management and Plaintiff's supervisors, were aware Talley's employment was terminated because Plaintiff reported that Talley called him a **NIGGER**.

48.     Subsequent to Plaintiff's report of a hostile work environment, Defendants began a campaign of retaliation against Plaintiff by removing Plaintiff from the work schedule and removing his assignments.

49.    To illustrate the severity of the retaliatory conduct, Plaintiff reported Talley's behavior on or about November 20, 2022. The following month, Plaintiff was removed from the work schedule and did not work any days in December 2022. By comparison, in December 2021, Plaintiff worked twenty (20) days.

50.    By way of further illustration, in November 2021 (prior to Plaintiff's report of hostile work environment) Plaintiff worked 23 days.  However, in November 2022, Plaintiff worked only 16 days. Moreover, after Plaintiff reported Talley's actions, he was completely removed from the work schedule but for 2 days in November.

51.    As a result of the retaliatory actions of Defendant's Plaintiff was constructively discharged from his employment with Defendants in or about January 2023.

<u>FOR A FIRST CAUSE OF ACTION:</u>
<u>VIOLATION OF TITLE VII</u>
<u>DISCRIMINATION BASED ON RACE/COLOR</u>
<u>(as to Defendants Troon Golf and Caddie Services)</u>

52.    Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

53.    Plaintiff, as an African-American, is a member of a protected class under Title VII.

54.    Throughout his employment with Defendants, Plaintiff was performing his job satisfactorily.

55.    Plaintiff was subjected to adverse employment actions by his employer and agents of his employer including, but not limited to, bullying, intimidation, unequal and unfair assignments, and being constructively discharged from his employment with Defendant.

56.    Plaintiff's treatment was different from similarly situated employees outside his protected class.  By way of example, Plaintiff was limited in the duties he was given when other Caucasian-

American employees were not. Plaintiff was also assigned less desirable and lower paying assignments than others outside of his protected class.

57.    Defendant's behavior humiliated Plaintiff, unreasonably interfered with his work performance, affected the terms, conditions, and privileges of his employment and otherwise caused Plaintiff severe psychological and physical harm.

58.    That as a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

59.    That the Defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the Plaintiff and, therefore, Plaintiff is entitled to recover punitive damages from the Defendant.

FOR A SECOND CAUSE OF ACTION:<br>
VIOLATION OF TITLE VII<br>
RETALIATION<br>
(as to Defendants Troon Golf and Caddie Services)

60.    Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

61.    That as alleged above, Plaintiff complained to Defendant that he was being discriminated against based on his race.

62.    That Plaintiff's complaints were made in good faith, and constitute protected activity under Title VII.

63.    Defendant's actions as alleged above created a work environment that a reasonable person would find to be harassing, hostile, and abusive.

64.    Despite being notified of the above-mentioned conduct, Defendant wholly failed to take prompt and effective remedial action to end the illegal conduct and Defendant, and, in retaliation for making complaints of discrimination, Defendant continued to subject Plaintiff to race-based discrimination in violation of Title VII.

65.    Subsequent to and in retaliation for Plaintiff making complaints, Defendant created and allowed the work environment to be so hostile that no person could have withstood such treatment.

66.    That as a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

67.    Defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the Plaintiff, and therefore Plaintiff is entitled to recover punitive damages from the Defendant.

FOR A THIRD CAUSE OF ACTION:
VIOLATION OF TITLE VII
HOSTILE WORK ENVIRONMENT
(as to Defendants Troon Golf and Caddie Services)

68.    Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

69.    During Plaintiff's employment, he was subjected to an unwelcome and hostile environment created by Defendant and its agents.

70.     The hostile environment Plaintiff was subjected to was based on his race and making complaints about race discrimination.

71.     Defendant's behavior humiliated Plaintiff, unreasonably interfered with his work performance, affected the terms, conditions, and privileges of his employment and otherwise caused Plaintiff severe psychological and physical harm.

72.     The hostile environment was sufficiently severe and pervasive to alter the conditions of his employment. Specifically, Defendant knew about, created, cultivated, and allowed the work environment to be so hostile that no reasonable person could endure it.

73.     That as a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

74.     Defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of Plaintiff and, therefore, Plaintiff is entitled to recover punitive damages from Defendant.

FOR A FIRST CAUSE OF ACTION
VIOLATION OF 42 U.S.C. 1981
DISCRIMINATION
(Against all Defendants)

75.     Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

76.     Defendants discriminated against Plaintiff based on Plaintiff's race and color. Such discrimination included, but was not limited to, Defendants assigning Plaintiff to work less

desirable and less lucrative assignments than Plaintiff's white co-workers; Defendants conspiring to limit Plaintiff's ability to work; Defendants giving preferential treatment to white caddies; and subjecting Plaintiff to verbal insults.

77.    Plaintiff was subject to discrimination and constructively discharged in Violation of 42 U.S.C. 1981.

78.    At the time Plaintiff was discharged from his employment, he was performing the functions of his employment in a matter which met his employer's expectations.

79.    As result of Defendants' actions, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

80.    Defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of Plaintiff and he is entitled to recover punitive damages from the Defendants.

<u>FOR A SECOND CAUSE OF ACTION:</u>
<u>VIOLATION OF 42 U.S.C. 1981</u>
<u>RETALIATION</u>
(Against all Defendants)

81.    Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

82.    That as alleged above, Plaintiff complained to Caddie Master that he was being harassed and discriminated against because of his race.

83.     That Plaintiff's complaints were made in good faith, and constitute protected activity under 42 U.S.C. §1981.

84.     Subsequent to and in retaliation for Plaintiff making complaints, Caddie Master continued to allow Plaintiff's work environment to be hostile.

85.     In retaliation for Plaintiff engaging in activity protected under 42 U.S.C. §1981, Caddie Master took Plaintiff off of the work schedule and constructively discharged Plaintiff.

86.     That as a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

87.     Defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the Plaintiff, and therefore Plaintiff is entitled to recover punitive damages from the Defendants.

<u>FOR A THIRD CAUSE OF ACTION:</u>
<u>VIOLATION OF 42 U.S.C. 1981</u>
<u>HOSTILE WORK ENVIRONMENT</u>
(Against all Defendants)

88.     Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

89.     Agents of KIC and Caddie Master, including but not limited to Talley, created a hostile work environment by limiting Plaintiff's access to work, excluding Plaintiff from opportunities and information about being assigned to specific work opportunities, assigning Plaintiff to "low

value" jobs, attempting to force Plaintiff to resign, yelling at Plaintiff, calling him a nigger, and other adverse employment actions because of Plaintiff's race.

90.    Plaintiff complained to Caddie Master that he was being harassed, discriminated against, and subject to a hostile work environment because of his race.

91.    That Plaintiff's complaint were made in good faith, and constitute protected activity under 42 U.S.C. §1981.

92.    Subsequent to and in retaliation for Plaintiff making complaints, Caddie Master also created a hostile work environment by further limiting Plaintiff's access to work and excluding him from opportunities to work.

93.    That as a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

94.    Defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the Plaintiff, and therefore Plaintiff is entitled to recover punitive damages from Defendants.

<u>FOR A FOURTH CAUSE OF ACTION:</u>
<u>CIVIL CONSPIRACY</u>
(Against all Defendants)

95.    Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

96.     Defendants Talley, Caddie Master, and KIC, conspired with each other, their agents, and other persons to injure the Plaintiff.  These acts include, but are not limited to, conspiring with others to create a hostile work environment, discriminate against Plaintiff, and attempt to force Plaintiff to resign from his employment because Plaintiff is a black American and made complaints about discrimination.

97.     The acts of Defendants and their conspirators were undertaken for the specific intentional, conscious, and deliberate purpose of harming Plaintiff. Specifically, Defendants, conspired to consciously, deliberately, and intentionally assign Plaintiff to "low value" loops, deny him access to members who requested his services, provide beneficial information to white caddies in an effort to hinder Plaintiff's opportunities to work, and inflict other injuries on Plaintiff.

98.     As a result of Defendants' actions, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

99.     Defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, and maliciously.  Therefore, Plaintiff is entitled to recover punitive damages from Defendants.

## FOR A NINTH CAUSE OF ACTION
## BREACH OF CONTRACT
(As to Defendant Caddie Master)

100.     Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

101.    During the relevant time period (September 2021 to January 2023), Defendant was an employee of Caddie Master.

102.    Defendant Caddie Master publishes and maintains an Employee Handbook, which assures employees of their right to report harassment and bullying and also contains anti-discrimination, harassment, and retaliation clauses.

103.    Defendant Caddie Master further states, in its Employee Handbook, that it is an equal opportunity employer, when it declares that there will be no discrimination as to race, color, or national origin.  Defendant Caddie Master further states, in its Handbook, that it will comply with the requirements of the law in implementing equal employment decisions.

104.    Defendant Caddie Master's Handbook further states all forms of harassment are strictly prohibited and will not be tolerated.

105.    The Handbook's anti-discrimination, harassment, and retaliation provisions and Equal opportunity employment provisions are definitive in nature and promise specific treatment including promptly and thoroughly investigating any claim of discrimination and harassment. Further, the handbook promises the specific treatment in these specific situations that Defendant Caddie Master will follow up as necessary to ensure no retaliation for making a complaint or cooperating with an investigation occurs.

106.    The Handbook memorialized an employment contract between Plaintiff and Defendant Caddie Master.

107.    Plaintiff and Defendant Caddie Master entered into a binding and valid contract whereby Plaintiff relied on Defendant Caddie Master, through its agents, reassurance that, pursuant to the Handbook and the promises made therein, Defendant Caddie Master would enforce its the anti-discrimination, harassment, and retaliation policies.  Plaintiff also relied on the Defendant's

reassurance that it will follow its Equal Employment Opportunity policy with respect to its employees, including when and how work is assigned.

108.    Plaintiff agreed to fulfill the duties of his position with Defendant Caddie Master in exchange for valuable consideration and salary and the promises contained in the Handbook.

109.    Defendant Caddie Master, through its agents, unjustifiably failed to perform its promised duties by failing to follow the terms of the Handbook with regard to its anti-discrimination, harassment, and retaliation policies or its Equal Employment Opportunity policy.

110.    Specifically, Defendant Caddie Master intentionally and willfully allowed Plaintiff to be subjected to discrimination, retaliation, and a hostile work environment. Defendants further intentionally and willfully allowed Plaintiff to be assigned service calls based on his race and the known or expected race of the customer requesting service.  Moreover, Defendant Caddie Master intentionally and willfully excluded Plaintiff from taking service calls based on his race and the known or expected race of the customer requesting service.

111.    Defendant Caddie Master's conduct, by and through its agents, was done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract.

112.    As a direct and proximate result of the actions of Defendant Caddie Master, Plaintiff sustained damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

FOR A TENTH CAUSE OF ACTION
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(As to All Defendants)

113.    Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

114.    By engaging in the activity described above including retaliating against Plaintiff, subjecting him to a hostile work environment, conspiring against Plaintiff, intentionally berating Plaintiff, and intentionally doing so in the presence of its employees, Defendants intentionally and recklessly inflicted severe emotional distress on Plaintiff, or was certain, or substantially certain, that such distress would result from his conduct.

115.    The intentional conduct of Defendants was so extreme and outrageous that it exceeded all possible bounds of decency, was atrocious, and is utterly intolerable in a civilized community.

116.    Defendants' intentional conduct caused Plaintiff to suffer extreme and severe emotional distress such that no reasonable person could be expected to endure it.

117.    As a direct and proximate result of the actions of Defendants, Plaintiff sustained damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

WHEREFORE, Plaintiff requests a jury trial for each cause of action and Plaintiff prays for the following relief against Defendants: for such amount of actual and special damages as the trier of fact may find, (including lost back and future wages, income and benefits, expenses associated with finding other work, severe psychological harm, emotional distress, anxiety, pain

and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, and physical and personal injuries), punitive damages, the cost and disbursements of this action, including reasonable attorneys' fees, prejudgment interest and for such other and further relief as the court deems just and proper.

RESPECTFULLY SUBMITTED,

Henderson & Henderson, LLC

s/ *Wesley E. Henderson*
Wesley E. Henderson (Fed Bar #: 13457)
578 East Bay Street, Ste. A
Charleston, SC 29403
P: 843-212-3188 | F: 843-872-0634
Email: wesley@hhlawsc.com

February 9, 2024
Charleston, South Carolina